Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RONALD LEWIS,

          Plaintiff,

    v.

SYNCHRONY BANK, *et al.*,

          Defendants.

Civil Action No. 20-cv-3090

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on Defendant Synchrony Bank's motion to dismiss. D.E. 13. The Court reviewed all submissions in support and opposition and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, the motion is denied.

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

    Plaintiff Ronald Lewis alleges that he opened a consumer credit account with Defendant Synchrony Bank ("Synchrony") in 2006 and eventually owed $1,180 on the account.[1] Compl. ¶¶ 14, 15. In January of 2018, Synchrony issued Lewis a "Cancellation of Debt" 1099-C informational tax form, stating that $813.45 of the debt was cancelled. *Id.* ¶ 16. After issuing the 1099-C, Synchrony reported to consumer reporting agencies ("CRAs") that Lewis's account

---

[1] The facts are derived from Plaintiff's complaint. D.E. 1. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

balance remained $1,180.  *Id.* ¶ 17.  Lewis then informed three CRAs - Equifax, Experian, and TransUnion - that incorrect information was reported.[2]  *Id.* ¶ 18.  Lewis alleges that the CRAs notified Synchrony of the disputed accuracy of the information and that Synchrony did not conduct an adequate investigation as required by the Fair Credit Reporting Act ("FCRA").  *Id.* ¶ 20-22.

In March of 2020, Lewis filed his Complaint.  D.E. 1.  The Complaint alleges that Synchrony's behavior violated Section 1681s of the FCRA, which creates a duty to investigate disputed information.  *Id.*  Synchrony now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 13.  Synchrony argues that the Complaint fails to state a claim because the issuance of a 1099-C does not mean that the debt was discharged.  *Id*.  Plaintiff opposed the motion, D.E. 22, to which Synchrony replied, D.E. 26.

## II.  LEGAL STANDARD

According to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed when it fails "to state a claim upon which relief can be granted."  In analyzing a motion to dismiss under Rule 12(b)(6), the Court will "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.2002).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Determining whether a

---

[2] Equifax Information Services, LLC; Experian Information Services, LLC; and TransUnion, LLC are also named Defendants.  D.E. 1.  Both TransUnion and Equifax have been dismissed from the case, D.E. 37, 42, and Experian does not join the current motion.

complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  While not a "probability requirement," plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).  Additionally, a court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### III. ANALYSIS

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009) (internal quotation marks omitted).  The FCRA was "crafted to protect consumers from the transmission of inaccurate information about them." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)).  To that end, the FCRA imposes duties on CRAs, which prepare credit reports, and "furnishers," such as banks, which provide credit data to CRAs.  *Id.*  The FCRA provides that when a consumer raises a dispute to a CRA regarding information in his credit report, the CRA must notify the furnisher of that information.  15 U.S.C. § 1681i(a)(2).  The furnisher, in turn, must do the following:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the [CRA] . . .;
> (C) report the results of the investigation to the [CRA]; [and]

> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

15 U.S.C. § 1681s-2.

To plead a claim against a furnisher, a consumer must allege that (1) he informed the CRA that he disputed the information that the furnisher provided, (2) the credit agency notified the furnisher, and (3) the furnisher failed to conduct a reasonable investigation. *See Gatanas v. Am. Honda Fin. Corp.*, No. 20-07788, 2020 WL 7137854, at *2 (D.N.J. Dec. 7, 2020) *(*citing *Berkery v. Verizon Comm'cns Inc.*, 658 F. App'x 172, 175 (3d Cir. 2016) (per curiam)). As to the accuracy of the information furnished, "even if the information is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (citing *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

Lewis alleges that Synchrony violated the FCRA by failing to conduct a reasonable investigation once Lewis disputed the information reported to the CRAs and the CRAs informed Synchrony of the dispute. D.E. 1. Synchrony argues that, as a matter of law, the issuance of a Form 1099-C does not mean that a debt is discharged, and Lewis has therefore failed to state a claim. D.E. 13-1 at 5.

A 1099-C is issued when an "applicable entity . . . discharges (in whole or in part) the indebtedness of any person during any calendar year." 26 U.S.C. § 6050P. There are eight delineated events that can trigger the filing and issuance of a Form 1099–C, among which is a "discharge of indebtedness pursuant to a decision by the creditor, or the application of a defined policy of the creditor, to discontinue collection activity and discharge debt." 26 C.F.R. § 1.6050P–1(b)(2)(i)(G). Courts disagree as to the legal significance of the issuance of a 1099-C:

> Most [courts] have held that, absent other evidence, the issuance of a Form 1099-C does not automatically discharge a debt.  *See e.g. FDIC v. Cashion*, 720 F.3d 169, 176–81 (4th Cir. 2013); *Cadle v. Neubauer*, 562 F.3d 369, 374 (5th Cir. 2009); *Wells Fargo Advisors, LLC v. Mercer*, 735 F. App'x 23 (7th Cir. 2018).  A small minority of courts have disagreed and found that the issuance of a Form 1099-C alone does cancel a debt.  *See In re Reed*, 492 B.R. 261, 268 (Bankr. E.D. Tenn. 2013); *In re Crosby*, 261 B.R. 470, 476–77 (Bankr. D. Kan. 2001); *In re Welsh*, 06-10831-ELF, 2006 WL 3859233, at *2 (Bankr. E.D. Pa. Oct. 27, 2006).  The minority have generally found that "because filing a Form 1099-C has legal significance to the debtor's income tax liability, and because the debtor faces penalties or fines for failing to comply with the obligations imposed, it would be inequitable to permit a creditor to collect the debt after having received the benefit of the 'charge-off' of the debt from filing the Form 1099-C."  *See Cashion*, 720 F.3d at 178.

*Johnson v. Branch Banking & Tr. Co.*, No. 3:18-CV-150-CRS, 2018 WL 4492478, at *2 (W.D. Ky. Sept. 19, 2018).

The Court does not reach which of the two competing positions is correct at this stage. Instead, at the pleading stage, Lewis "need not *prove* but merely plead plausibly" that the report was inaccurate and that Synchrony failed to reasonably investigate the dispute as required by the FCRA.[3] *Shull* v. *Synchrony Bank*, No. 1:19-CV-00715, 2020 WL 1467269, at *4 (M.D. Pa. Mar. 26, 2020).  The Complaint alleges that Lewis's debt was discharged, Compl. at ¶ 16, Synchrony

---

[3] Synchrony cites to a string of cases supporting the idea that the issuance of a Form 1099-C does not mean that a debt is discharged, in line with the majority view.  None of the cases, however, were decided on a motion to dismiss and only one (*Ware*) concerns alleged FCRA violations.  DE 13-1 at 10-13 (citing *In re Zilka*, 407 B.R. 684 (Bankr. W.D. Pa. 2009); *Verdini v. First Nat. Bank of Pennsylvania*, 2016 PA Super 56, 135 A.3d 616 (2016); *Owens v. Comm'r*, 67 F. App'x 253 (5th Cir. 2003); *In re Washington*, 581 B.R. 150 (Bankr. D.S.C. 2017); *Ware v. Bank of Am. Corp.*, 9 F. Supp. 3d 1329 (N.D. Ga. 2014); *F.D.I.C. v. Cashion*, 720 F.3d 169, 171 (4th Cir. 2013); *Capital One, N.A. v. Massey*, No. 4:10-CV-01707, 2011 WL 3299934 (S.D. Tex. Aug. 1, 2011); *United States v. Reed*, No. 3:09-CV-210, 2010 WL 3656001 (E.D. Tenn. Sept. 14, 2010); *Leonard v. Old Nat. Bank Corp.*, 837 N.E.2d 543 (Ind. Ct. App. 2005)).

continued to report the full balance, *id*. at ¶ 17, Lewis disputed the accuracy of the information, *id*. at ¶ 18, the CRAs notified Synchrony of the dispute, *id.* at ¶ 20, and Synchrony failed to investigate, *id*. at ¶ 22.  Further, Plaintiff does not plead that the 1099-C itself discharged the debt, but rather that the debt was discharged, and the 1099-C served as memorialization.  *Id.* at ¶ 17 ("Defendant discharged $813.45 of the debt, which was memorialized via a 1099-c issued to Plaintiff.").  It is premature to dismiss Plaintiff's claims at the pleading stage because his allegations of discharge are plausible.[4]  *See Shull v. Synchrony Bank*, No. 1:19-CV-00715, 2020 WL 1467269, at *5 (M.D. Pa. Mar. 26, 2020) (denying motion to dismiss complaint alleging FCRA violation where Plaintiff pleaded existence of 1099-C); *Vaughn v. Branch Banking & Tr. Co*., No. 3:18-CV-00444-GNS, 2019 WL 1290884, at *3 (W.D. Ky. Mar. 20, 2019) (same); *Johnson v. Branch Banking & Tr. Co*., No. 3:18-CV-150-CRS, 2018 WL 4492478, at *2 (W.D. Ky. Sept. 19, 2018) (same); *Kunwar v. Capital One, N.A*., No. 17-CV-04849-LHK, 2017 WL 5991864, at *5 (N.D. Cal. Dec. 4, 2017) (same).

Accepting the well-pleaded allegations in the Complaint to be true, including the allegation that the debt was discharged coupled with Synchrony's issuance of the 1099-C, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Lewis has plausibly pled that Synchrony violated the FCRA in failing to reasonably investigate the disputed balance.  The motion to dismiss is denied.

---

[4] Synchrony argues also that the issuance of a 1099-C does not mean Synchrony must cease furnishing information that Plaintiff has an outstanding amount past due, relying mainly on Federal Trade Commission guidance stating what happens "generally."  D.E. 26 at 9 (citing Federal Trade Commission – Consumer Information, https://www.consumer.ftc.gov/articles/0117-time-barred-debts).  The citation, however, concerns time-barred debts, a scenario not raised in the Complaint.

**IV. CONCLUSION AND ORDER**

Therefore, for the foregoing reasons, and for good cause shown,

IT IS on this 28th day of January, 2021

**ORDERED** that Synchrony's motion to dismiss (D.E. 13) is **DENIED**.

_____
John Michael Vazquez, U.S.D.J.